## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JOSE LUIS BUGUENO PENA,

      Petitioner,

v.                                                                   No. 25-cv-01310-JB-SCY

WARDEN, Otero County Processing Center,
MARY DE ANDA-YBARRA, Field Officer Director of
Enforcement and Removal Operations, El Paso
Field Office, Immigration and Customs
Enforcement; KRISTI NOEM, Secretary, U.S. Department
Of Homeland Security; AND PAMELA BONDI,
U.S. Attorney General,

      Respondents,

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter comes before me on Petitioner Jose Luis Bugueno Pena's Petition for Writ of Habeas Corpus (Doc. 1), and Respondents' Motion to Dismiss Petition for Writ of Habeas Corpus (Doc. 5).[1] United States District Judge James Browning referred this case to me under 28 U.S.C. §§ 636(b)(1)(B), (b)(3), and *Va. Beach Fed. Sav. & Loan Ass'n v. Wood*, 901 F.2d 849 (10th Cir. 1990) "to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case." Doc. 2. Having reviewed the briefs and the law, I recommend that the Court deny the petition as moot.

---

[1] Although the motion to dismiss is only filed on behalf of the federal Respondents, they acknowledge that "all arguments made on behalf of the [federal] respondents apply equally to the Warden." Doc. 5 at 1 n.1.

**BACKGROUND**

Petitioner Jose Luis Bugueno Pena is a citizen on Chile who entered the United States lawfully through the Visa Waiver Program ("VWP") on December 16, 2020 with authorization to remain in the United States for a temporary period, not to exceed 180 days. Doc. 5-2 at 3 (180 day period expiring on March 15, 2021). Border Patrol encountered Mr. Bugueno Pena on July 8, 2025 at a correctional center in Miami, Florida and he was taken into custody and detained by Immigrations and Customs Enforcement ("ICE"). Doc. 5-1 ¶ 7; Doc. 5 at 4.

On July 15, 2025, the Department of Homeland Security served Mr. Bugueno Pena with a Notice of Intent to Issue a Final Administrative Removal Order under the VWP. Doc. 5-2 at 3. Mr. Bugueno Pena refused to sign acknowledgment of the Notice of Intent and requested asylum. Doc. 5-2 at 4. That same day, the Department of Homeland Security issued a Final Administrative Removal Order, ordering Mr. Bugueno Pena removed to Chile. Doc. 5-2 at 5. Because Mr. Bugueno Pena requested asylum, the matter was referred to an Immigration Judge ("IJ"). Doc. 5-2 at 1-2. The IJ held a hearing on November 25, 2025, during which Mr. Bugueno Pena withdrew his asylum request and both parties waived an appeal. Doc. 5-3.

On December 19, 2025, Mr. Bugueno Pena, proceeding pro se, filed the present Petition for Writ of Habeas Corpus while detained in Torrance County Processing Center. Doc. 1. After the Court ordered a response, Respondents filed a Motion to Dismiss on January 15, 2026. Doc. 5; *see also* Doc. 8 (Petitioner's response to the motion to dismiss). In their motion to dismiss, Respondents indicated that Mr. Bugueno Pena was scheduled for removal to Chile on January 28, 2026. Doc. 5 at 3. Accordingly, on February 2, 2026, the Court ordered Respondents to file a status report as to whether Mr. Bugueno Pena had been removed and whether his detention issue was moot. Doc. 7. Respondents failed to file the ordered status report and so the Court issued an

Order to Show Cause. Doc. 8. After Respondents again failed to respond to the Order to Show Cause, the Court set a show cause hearing for February 25, 2026. Doc. 10.

Shortly before the hearing, Respondents filed a status report explaining that Mr. Bugueno Pena's removal did not occur on January 28 as originally scheduled due to "difficulties coordinating Petitioner's transfer to the staging site," but that he was scheduled to be removed on February 25, 2026. Doc. 12; *see also* Doc. 14 (clerk's minutes, noting Respondents made the same representation during the show cause hearing). On March 3, Respondents filed a status report indicating that Mr. Bugueno Pena was removed to Chile on February 27, 2026. Doc. 17.

## ANALYSIS

In his petition, Mr. Bugueno Pena asserts that he was never provided a bond hearing and that his continued detention violates the Due Process Clause of the Constitution. Doc. 1 at 1. In response, Respondents argue that Petitioner is subject to mandatory detention under the VWP, that he has received all the process he is entitled to, and that his detention post-final removal order comports with *Zadvydas v. Davis*, 533 U.S. 678 (2001). Doc. 5. Because Mr. Bugueno Pena has now been removed from the United States, I begin with a mootness analysis.

As explained by Judge Martinez,

Under Article III, Section 2, federal judicial power is limited to "cases" or "controversies," a requirement that exists "through all stages of federal judicial proceedings, [both] trial and appellate . . . ." *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998).

An application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 allows a person in custody to challenge the legality of that custody. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see also McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 812 (10th Cir. 1997). "A released petitioner can only prevail where a wrongful conviction or detention has 'continuing collateral consequences' sufficient to meet the in-custody requirement." *Rodriguez-Olalde,* 2021 WL 1169712, at *2 (citing *Spencer*, 523 U.S. at 7; *Dumas v. U.S. Parole Comm'n*, 397 F. App'x 492, 493 (10th Cir. 2010)). It is the petitioner's burden to show that

3

adequate collateral consequences exist to prevent the case from becoming moot. *See Wilcox v. Aleman*, 43 F. App'x. 210, 212 (10th Cir. 2002) (holding that a habeas "petitioner has the burden of demonstrating the existence of sufficient collateral consequences to save the action from ... mootness ....").

Petitioner's March 14, 2025 brief highlights several collateral consequences stemming from the expedited removal order. (*See* Doc. 24 at 4.) These include: (1) a five-year bar on reentry into the United States under 8 U.S.C. § 1182(a)(9)(A)(i); (2) permanent ineligibility for certain immigration benefits without a waiver, pursuant to 8 U.S.C. § 1182(a)(9)(A)(iii); and (3) personal and professional hardship, including separation from family, loss of employment, and damage to her immigration record that may adversely affect future applications for entry into the United States. (*See id*.) Petitioner contends that her collateral consequences satisfy Article III's case-or-controversy requirement because, despite her removal, she maintains a "personal stake" in the outcome of this litigation. (*See id*. at 4–5.)

Accepting Petitioner's collateral consequences as true, she still fails to allege a *redressable* injury under Section 2241, which empowers courts to challenge ongoing detention and order release—not to undo a completed removal or erase its statutory penalties. In *Rodriguez-Olalde*, the court applied *Spencer v. Kemna's* mootness framework and found that allegations of post-removal danger in Mexico and prejudice to future immigration applications were "collateral consequences" in name only, as the Court "[could not] modify Petitioner's detention now that it ha[d] been completed or otherwise fashion a habeas remedy under § 2241." *Rodriguez-Olalde*, 2021 WL 1169712, at *2–3 (quotation omitted). The decision emphasized that Section 2241 offers no vehicle to *reverse* an expedited removal order; the best relief would have been a belated release determination, which a district court cannot grant once custody has ended. *See id.*; *see also Ferry v. Gonzales*, 457 F.3d 1117, 1132 (10th Cir. 2006) (rejecting the notion that inability to return to one's family constitutes a detention-based injury recognized under § 2241 and clarifying that any such collateral consequence flows from the removal order, not the detention).

The same principle applies here. Even if the Court deemed Petitioner's detention flawed, release pursuant to Section 2241 would do nothing to remove her reentry bar, restore her eligibility for benefits, reunite her with her family, or cleanse her immigration record. Petitioner has been removed and released and has alleged certain harms, but those claims fail to establish any continuing legal consequences

4

> sufficient to maintain a live case or controversy that are cognizable under 28
> U.S.C. § 2241.

*Dehghani v. Castro*, No. 2:25-CV-0052 MIS-DLM, 2025 WL 1937605, at \*2–3 (D.N.M. July 15, 2025), report and recommendation adopted, 2025 WL 2717845 (D.N.M. Sept. 24, 2025).

Here, the relief Mr. Bugueno Pena requests in his petition—"immediate release from custody, judicial review of the legality of his detention, and correction or vacatur of the unlawful confinement order"—is no longer available. Doc. 1 at 1; *see also* Doc. 8 at 2 (response to motion to dismiss, requesting "release from custody, or, in the alternative, . . . an individualized bond hearing"). That is, because he has been removed, there is no redressable injury under Section 2241 for the Court to consider. And even if Mr. Bugueno Pena were to allege collateral consequences of his removal—as the petitioner is *Dehghani* did—such consequences of removal would not be redressable by the relief sought here: release from detention pending removal. "Because he has been deported, Petitioner's initial claim has been mooted and there is no remedy that can be granted by the court. Section 2241 provides a remedy when a petitioner is 'in custody in violation of the Constitution or laws . . . of the United States.'" *Valle Vargas v. De Anda-Ybara*, No. CV 25-834 JB/GBW, 2026 WL 63932, at \*4 (D.N.M. Jan. 8, 2026) (citing 28 U.S.C. § 2241(c)(3)), report and recommendation adopted, 2026 WL 256810 (D.N.M. Jan. 30, 2026); *see also Ferry v. Gonzales*, 457 F.3d 1117, 1132 (10th Cir. 2006) ("[Petitioner's] challenge to the legality of his detention without an opportunity for bond or a bond hearing is moot. [Petitioner's] administrative removal order has been executed, and thus, [Petitioner] is no longer in the custody of the DHS to benefit from a bond determination or release.").

## RECOMMENDATION

Because Mr. Bugueno Pena has been removed, the relief he requests—release from detention while his removal is pending—is no longer available. As such, I recommend the Court DENY AS MOOT the Petitioner for Writ of Habeas Corpus (Doc. 1).

Lastly, because Mr. Bugueno Pena has been removed, he will likely not receive notice of this recommendation at his address of record at the Torrance County Processing Center. *See, e.g.*, Doc. 18 (returned mail). However, several of his filings in this case have been sent from a third-party address, and so the Clerk's Office shall mail a copy of this recommendation to that address:

> Daniela Hernandez
> 19301 W. Dixie Hwy
> Miami, FL 33180

_____
Steven C. Yarbrough
United States Magistrate Judge

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

6